**OKLAHOMA CITY GOLF AND COUNTRY CLUB,**
Appellant,

v.

**OKLAHOMA TAX COMMISSION,**
Appellee.

No. 76754.

Supreme Court of Oklahoma.

Jan. 28, 1992.

McAfee & Taft by Philip D. Hart, James Dudley Hyde, and John A. Papahronis, Oklahoma City, for appellant.

Oklahoma Tax Com'n by Stanley Johnston, Acting Gen. Counsel, and Christy J. Caesar, Asst. Gen. Counsel, Oklahoma City, for appellee.

HODGES, Vice Chief Justice.

This appeal is before this Court to review an order of the Oklahoma Tax Commission (Commission) denying the Oklahoma City Golf and Country Club's request for a refund of taxes paid on a capital assessment of its members. The issue before this Court is whether capital assessment monies are "dues or fees" subject to sales tax under the Oklahoma Tax Code, particularly sections 1352(L)(3) and 1354(1)(K) which subject capital assessments to sales tax. We answer in the affirmative.

The facts were stipulated before the Commission. The Oklahoma City Golf and Country Club (Club) is a social club consisting of members who own stock and those who do not. All members are required to pay monthly dues to the Club. From time to time, members may be required to pay a separate assessment that may be used for specific purposes. Members are only required to pay the additional assessment if approved by stock-owning members. The special assessment would be in addition to, not in lieu of, monthly dues. An assessment would not be a regular occurrence but would only arise when major capital expenditures were necessary. It is undisputed and the Club does not argue that, if the projects had been funded by an increase in dues, sales tax would have been due. *See* Okla.Stat. tit. 68, § 1354(1)(K) (1981).

On March 27, 1989, the board of directors of the Club sent a letter to the members informing them that board was recommending an assessment of $1,140,000 to fund several improvements to enhance the physical facilities of the Club. The letter also called a meeting for May 23, 1989, for the members to vote on the capital assessment. It also outlined the projects, their costs, and how the assessment would be handled.

Sections 1, 2, and 3 of Article III of the Club's bylaws specifically address membership dues, membership transfer fees, and charges to members' accounts. Section 4 of Article III addresses "capital assessments" and states:

Article III Section 4. Capital Assessment

The Membership may be assessed for capital improvements only upon affirmative vote of a majority of the stockholders, present in person or by proxy at a meeting of the stockholders, the notice of which contains the substance of the proposed assessment.

The proposed assessment called for the following projects:

(1) replacement of the outdated inadequate filter system, deteriorated decking above the equipment room, and the unsafe diving platform of the swimming pool. Cost: $150,000 to $180,000;

(2) replacement of the air conditioning unit which serves the pro shop, men's locker room, and Gallery Grill and Bar which, after 17 years, has worn out and could not be repaired. Also, replacement of two compressors for the unit which serves the formal dining room, the ladies' locker room, and Grill and Terrace Bar. Cost: $100,000 to $120,000;

(3) resurfacing of the parking lot and expanding it by 68 spaces. Cost: $180,-000 to $240,000;

(4) replacing the 63rd Street Snack Shack, which is not up to fire and safety standards, with a modern facility containing new equipment. Cost: $85,000 to $110,000.

(5) pay off $400,000 of debt to Liberty National Bank and Trust Company remaining from the 1982 and 1986 capital improvement programs.

The assessment was apportioned among the members as follows:

| | | | |
|---|---|---|---|
| Stock Members | 500 × $1,500 | = | $ 750,000 |
| Social Certificate Members | 346 × $1,000 | = | 346,000 |
| Others (Seniors, Juniors, Widows, etc.) | 220 × $ 200 | = | 44,000 |
| | Total | | $1,140,000. |

A majority of the stock members approved the assessment on May 23, 1989. The members were given the option of paying the assessment in full in June of 1989, over a three-month period without interest, or to amortize the assessment over 24 monthly installments, plus interest, at Liberty National Bank's base rate.

The Club asked the Commission whether the assessment was subject to state and municipal sales tax. On June 9, 1989, the Commission replied that the assessment was "dues or fees" under section 1354(1)(K) and that sales tax was due as a result of the assessment.

Each month, beginning July 14, 1989, the Club paid the Commission, under protest, sales tax on the amounts of the assessment collected during the preceding month. On November 17, 1989, the Club filed its verified Claim for Refund with the Commission. By a letter dated January 12, 1990, the Commission denied the Claim for Refund. On February 9, 1990, the Club filed a verified Protest of the Commission's denial of the Claim for Refund.

The record provides facts other than those to which the parties stipulated before the Commission. Article III section (1)(d) of the bylaws provided that if a member failed to pay any indebtedness, the board of directors had the authority to cancel the membership of that person. Upon the cancellation of the membership, the person lost all rights and privileges to the Club and could not be reinstated for two years. Also, the Club sent a letter to its members stating that the board of directors thought the members would prefer an assessment to an increase in dues and that if the assessment was not approved, the board would "consider a dues increase in order to meet [the] capital requirements."

The Oklahoma Sales Tax Code imposes sales tax on dues or fees paid to clubs "including free or complimentary dues or fees which have a value equivalent to the charge that would have otherwise been made, including any fees paid for the use of facilities or services rendered at a health spa or club or any similar facility or business." Okla.Stat. tit. 68, § 1354(1)(K) (1981). But the code does not define "dues or fees." Therefore, these terms must be defined by their ordinary usage. See Hess v. Excise Bd. of McCurtain Co., 698 P.2d 930, 932 (Okla.1985).

"Dues" is defined as it applies to clubs as "sums paid toward support and maintenance of same and as a requisite to retain membership." Black's Law Dictionary 450 (5th ed. 1979). Webster's defines "dues" as "the fee or charge required for membership, affiliation, initiation, use, subscription." Webster's Third New International Dictionary 699 (1963).

We must consider whether the "capital assessment" falls within this definition. The assessment in this case was paid for the support and maintenance of the Club and was a requisite to retain membership. If a member did not pay the assessed amount, the rights and privileges of that member were subject to being canceled and could not be reinstated for two years. The letter sent to the members intimated that the assessment was an alternative to increasing dues. It also intimated that if the members did not approve the assessment, that the directors might increase the dues to pay for the improvements.

The Club attempts to distinguish the "assessment" from "dues." The Club argues that "dues" are regular systematic obligations that can be assessed by the board of directors; the "capital assessment" was not a recurring obligation and had to be

voted on by the membership. While this argument has some appeal, the Legislature did not intend to allow organizations to escape sales tax by merely denoting "dues" as a "capital assessment." The Club indicated that if the members did not approve the capital assessment, then the dues would be increased to cover the expenses. The Club does not argue that if the dues had been increased, the members would have incurred a sales tax on the increase.

The Club raises the issue of the constitutionality of the Commission's order. It argues that "[t]he Commission has failed to show a 'legitimate state purpose' for treating the [Club] differently from general business corporations; thus, the Commission's proposed construction of 68 Okla. Stat. § 1352(L)(3) and 1354(K) would result in a violation of the equal protection provision of the United States Constitution." The fourteenth amendment of the United States Constitution, section 2 protects those similarly situated from being treated differently. *Standard Oil Co. v. Tennessee*, 217 U.S. 413, 420, 30 S.Ct. 543, 543–44, 54 L.Ed. 817 (1910); *Wilson & Co. v. Hickey*, 186 Okla. 324, 325, 97 P.2d 564, 566 (1940). The Club and general business corporations are not similarly situated. The purpose of a social club is not to make a profit. That is the purpose of business corporations. Social clubs are incorporated under different statutory provisions than business organizations. Social clubs and business corporations are treated differently for income tax purposes. Because the Club and general business corporations are not similarly situated, the equal protection clause does not require that they be treated similarly.

The Club contends that the imposition of sales tax on the special assessments would result in double taxation in violation of the fourteenth amendment to the United States Constitution. That is the members are paying taxes on the assessment and on the improvement. Double taxation occurs where the same tax is imposed on the same subject matter by the same taxing power. *Ramco, Inc. v. Director of Dept. of Revenue*, 248 N.W.2d 122, 124 (Iowa 1976);

Black's Law Dictionary 441 (5th ed. 1979). In this case, the taxes are being imposed on two separate transactions and on different parties. The club members pay the taxes on the assessment, and the contractor pays the taxes on the materials used for the projects. Therefore, the imposition of sales tax on the assessment does not result in double taxation.

The Commission's order did not violate the equal protection clause or the fourteenth amendment and was a valid interpretation of the Oklahoma Sales Tax Code. Therefore, the Commission's order denying the Club's protest is affirmed.

AFFIRMED.

LAVENDER, SIMMS, DOOLIN, HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., dissents.